# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | **JUDGE RICHARD L. SPEER** |
| Joseph/Patricia Rudski | Case No. 06-3040 |
| Debtor(s) | (Related Case: 05-73199) |
| Roger/Claire Kille | |
| Plaintiff(s) | |
| v. | |
| Joseph/Patricia Rudski | |
| Defendant(s) | |

## DECISION AND ORDER

This cause is before the Court after a Trial on the Plaintiffs' Complaint to Determine Dischargeability. The Plaintiffs bring their Complaint under the statutory exception to dischargeability stated in 11 U.S.C. § 523(a)(2)(A). The Court has now had the opportunity to review the arguments of the Parties, the exhibits, and the entire record of the case. Based upon that review, and for the reasons set forth hereafter, the Court finds that judgment should be entered for the Plaintiffs. Accordingly, the debt at issue is Nondischargeable.

## FACTS

The Defendants/Debtors, Joseph and Patricia Rudski, are husband and wife. In January of 1999, the Debtor, Joseph Rudski (hereinafter referred to as the "Debtor") established a real estate investment business with the intent to purchase and renovate real estate for resale and/or lease to

tenants. During the operation of this business, the Debtor utilized mostly commercial based financing. Later, the Debtor sought to expand his options by seeking private investments. To attract private investors, the Debtor placed an advertisement in a local newspaper soliciting loans for private real estate lending. The Debtor also hired an agency to draft and print a sales brochure targeting his potential investors.

After reading the Debtor's advertisement in February of 1999, the Plaintiff/Creditor, Roger Kille (hereinafter referred to as the "Creditor") arranged an initial meeting with the Debtor, at which time the Debtor gave the Creditor a sales brochure. The sales brochure outlined both Parties' responsibilities, the benefits the Creditor would receive, and gave assurances that a mortgage secured in the Creditor's name would protect his investment in the event the Debtor's business became insolvent. Also, according to the brochure, upon the closing of the Parties' investment deal, the Creditor would receive an original note, a copy of the mortgage, a fire insurance policy, an assignment of rents, a title insurance policy, and a letter regarding the value of the property.

After considering the matter, the Creditor accepted the Debtor's offer. The Creditor, who has knowledge of and prior experience in the real estate business, testified that, with respect to such transactions, he always received a first mortgage as security for his real estate investments. The Creditor further stated that he only agreed to invest with the Debtor because he believed his money would be used to purchase real estate on which he would receive a mortgage. Ultimately, however, no mortgage securing the Creditor's investment was ever provided.

At the closing of the Parties' transaction, in April of 1999, the Creditor gave to the Debtor a check in the amount of $25,000.00, with the Debtor, in return, executing a promissory note. No mortgage was executed at that time, with the Creditor relating to the Court that he was not initially alarmed by this because, at the time of the closing, the Debtor had yet to purchase any real estate with his investment. The promissory note executed by the Debtor set forth payment terms consisting of 60

Roger/Claire Kille v. Joseph/Patricia Rudski
Case No. 06-3040

monthly interest payments, each for $312.50, with a balloon payment at the end of note's term for the principal.

As it regards the Debtor's promise to secure the Creditor's investment with a mortgage, numerous representations were made. At the onset, the first monthly interest payment received by the Creditor was accompanied by a note in the Debtor's handwriting stating, "I have insurance policy and mortgage prepared." (Pl. Ex. 5). During the following period of time, the Debtor, in response to the Creditor's numerous inquiries, made representations to the effect that there were obstacles he had to overcome and that conveying a mortgage is a lengthy process. Finally, after failing to receive a mortgage securing his investment, the Creditor demanded an immediate return of his investment, with the Debtor agreeing to "buyout" the Creditor's investment. However, no such "buyout" ever took place.

While the Debtor never secured the Creditor's investment with a mortgage, the facts do show that the Debtor used the funds he obtained from the Creditor to purchase a rental property. And as it concerns this property, the Debtor went so far as to obtain an insurance policy on the property wherein the Creditor and his wife, the Co-Plaintiff, were named as the mortgagees. (Doc. No. 7). A copy of the insurance policy was provided to the Creditor. The Debtor was unable to provide an explanation for the policy's existence, other than to acknowledge that he made a misrepresentation to the insurance company.

In May of 2004, after making 59 out of the 60 required interest payments, the Debtor defaulted on the last interest payment and the payment of the principal. The Creditor thereafter filed a complaint in state court. In the state-court proceeding, a consent judgment was entered awarding the Creditor $27,809.19, plus 10% per annum interest. As a part of the consent judgment, the Debtor agreed to make monthly payments of $500.00 until the judgment was satisfied. Under this arrangement, the

Page 3

Roger/Claire Kille v. Joseph/Patricia Rudski
Case No. 06-3040

Creditor received $1,000.00, before the Debtor again defaulted. In October of 2005, the Debtor and his wife filed for Chapter 7 bankruptcy protection in this Court.[1]

## DISCUSSION

The Plaintiffs' complaint to determine dischargeability is brought pursuant to 11 U.S.C. § 523(a)(2)(A). This section, which prevents the discharge of debts incurred through fraud, provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

Proceedings, such as this, to determine the dischargeability of a particular debt are deemed core proceedings over which this Court has been conferred with subject matter jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(I); 28 U.S.C. § 1334.

A creditor bringing a claim under § 523(a)(2)(A) bears the burden of establishing, by at least a preponderance of the evidence, the existence of all these elements:

(1) the debtor made false representations;

(2) the debtor knew such representations to be false at the time they were made;

---

[1] No evidence was produced against the Debtor's wife, and Co-Defendant in this action. Thus, the Plaintiffs' Complaint, as a matter of law, must be dismissed against her.

Page 4

> (3) the representations were made with the intent to deceive the creditor;
>
> (4) the creditor relied on the representations; and
>
> (5) the creditor's loss was the proximate result of the misrepresentation having been made.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir.1998). On the applicability of these elements, the Debtor does not contest that he failed to abide by his promises to provide a mortgage to secure the Creditor's investment and, that in reliance thereon, the Plaintiffs suffered a loss. Furthermore, as it regards the mortgage, it cannot be seriously argued that the Plaintiff did not rely on the Debtor's representations, with the undisputed facts showing that a bulk of the post-transaction contact between the Parties centered on the issue of the mortgage. *See Field v. Mans*, 516 U.S. 59, 70-71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (adopting the lower subjective standard of justifiable reliance as opposed to the objective standard of reasonable reliance). Thus, only the second and third elements are in material dispute: whether the Debtor, having present knowledge as to the falsity of the representation, acted with the intent to deceive the Plaintiffs?

The failure to fulfill a promise, standing alone, is not a sufficient ground upon which to base a finding of fraudulent intent. *Mack v. Mills*, 345 B.R. 598, 604 (Bankr.N.D.Ohio 2006), *citing Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (Bankr. D.Conn.1983). A finding of fraudulent intent under § 523(a)(2)(A) instead requires that a creditor show that the debtor had no intent to honor the obligation at the time the debt was incurred. *Clyde-Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 854 (Bankr.N.D.Ohio 2002). On this matter, the Sixth Circuit Court of Appeals, *In re Rembert*, held that, "the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." 141 F.3d 277, 281 (6th Cir.1998). And with the subjective intent of a debtor at issue, this Court previously observed: "of utmost importance in any fraudulent intent analysis is the credibility the Court attaches to the testimony of the debtor and any other witnesses called to testify." *Mack v. Mill (In re Mills)*, 345 B.R. 598, 604 (Bankr. N.D.Ohio 2006).

Roger/Claire Kille v. Joseph/Patricia Rudski
Case No. 06-3040

Still, as it is highly unlikely that any debtor will admit to acting with the intent to deceive, a court may also "consider circumstantial evidence concerning the debtor's state of mind at the time of the alleged deception." *Binger v. Bloomfield (In re Bloomfield)*, 293 B.R. 148, 153 (Bankr. N.D.Ohio 2003). The utilization of circumstantial evidence may include assessing factors such as the debtor's conduct after incurring the obligation, the debtor's financial sophistication, and whether the debtor failed to "undertake measures to perform their obligation." *Id.*; *accord Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir.1996). But ultimately, the Court in *In re Rembert* held that what a court must determine is whether the totality of the circumstances "leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." 141 F.3d at 282, *citing Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 332 (Bankr. N.D.Ill.1995).

In this matter, when cumulatively viewing the circumstances, a number of problems arise insofar as it concerns the Debtor's failed promise to convey to the Creditor a mortgage interest. The first is simply the Debtor's evasive conduct. On multiple occasions, the Creditor made inquiries into the mortgage, with the Debtor always coming up with a new excuse as to why the mortgage could not be conveyed today, but would be conveyed soon. While the Court appreciates that matters with real estate investments may not always occur immediately, at some point, such an excuse breaks down; euphemistically speaking, 'soon' must occur at some time.

Especially problematic in this regard is that after the Creditor made his investment, the Debtor actually purchased a rental property. Moreover, at the time the Creditor made his investment, the Debtor was the owner of other parcels of real property. The Debtor, thus, being the fee owner of real property, had both the opportunity and the ability to fulfill his promise to convey a mortgage – albeit the Debtor may not have been immediately able to fully perform as there is some question as to whether the Debtor had the ability to convey a first mortgage. Yet, despite having the ability to at least partially perform his promise, such as by providing to the Creditor a second mortgage on a parcel of property, the Debtor never even made an attempt to take such an action. In this light, the Debtor's conduct becomes hard to reconcile without placing fraud into the equation.

Page 6

Roger/Claire Kille v. Joseph/Patricia Rudski
Case No. 06-3040

The only strong factor mitigating against fraud is that the Debtor did make substantial progress in fulfilling his obligation under the terms of the Parties' promissory note, missing only the last periodic payment. As has been previously noted by this Court: "it is well-established that partial payments on a debt mitigate heavily against a finding of fraudulent intent." *Busch, Inc. v. Melissa Grilliot (In re Grilliot)*, 293 B.R. 725, 730 (Bankr. N.D.Ohio 2002). However, given the importance that the Creditor attached to the mortgage, and his reliance on its existence when providing financing, the promise to convey a mortgage is more properly viewed as a separate promise. Thus the fact that the Debtor may not have been fraudulent with respect to the promissory note, while potentially a mitigating factor, does automatically denote that a separate fraud may not exist with respect to the mortgage.

In an attempt, however, to lessen the separateness of the promissory note and the mortgage obligation, the Debtor, in his testimony to the Court, alluded to misunderstanding the importance of representing to the Creditor that his investment would be "secured by real estate." The Debtor also asserted that he did not fully understand why the Creditor "would be so interested in receiving a mortgage." However, both these proposed justifications have a hollow ring.

The Debtor testified that, before entering the real estate business, he successfully managed a construction business for 15 years. The Debtor also testified that he expended a significant sum of money to take a course on the real estate business. The Court thus finds it hard to believe that the Debtor did not have at least a basic appreciation of the significance of a mortgage, and also why an investor would seek to have their investment secured thereby. But even if this were not the case, firmly tipping the balance toward a finding of fraud is the subsequent conduct engaged in by the Debtor.

First, the Debtor sent to the Creditor and his wife a handwritten note falsely stating that a mortgage in their name had been prepared. (Pl. Ex. 5). Second, the Debtor admittedly misrepresented to an insurance company that the Creditor and his wife were mortgagees on the insured property, providing then the Creditor with a copy of the insurance policy. (Pl. Ex. 7). Such measures smack of

Page 7

Roger/Claire Kille v. Joseph/Patricia Rudski
Case No. 06-3040

a cover-up, and as such, are difficult to interpret in a way other than that, at the time of the Parties' transaction, the Debtor never had any intention of providing to the Creditor a mortgage to secure his investment. As so often happens, one lie begets another.

Consequently, when all the foregoing considerations are weighed, the Court finds that the Plaintiffs have sustained their burden of showing that, that with respect to the mortgage, the Debtor, having present knowledge as to the falsity of his representation, acted with the intent to deceive the Plaintiffs. Thus, the Court must hold that the Debtor's obligation to the Plaintiffs is nondischargeable pursuant to § 523(a)(2)(A). In reaching this conclusion, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the claim held by the Plaintiffs, Roger/Claire Kille, against the Defendant, Joseph Rudski, is a nondischargeble debt pursuant to 11 U.S.C. § 523(a)(2)(A).

*IT IS FURTHER ORDERED* that as to the Defendant, Patricia Rudski, the Plaintiffs' Complaint to Determine Dischargeability, be, and is hereby, DISMISSED.

Dated: December 8, 2006

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 8th day of December, 2006 to:

Claire Kille
6639 Emch
Walbridge, OH 43465

Roger Kille
6639 Emch
Walbridge, OH 43465

C. Drew Griffith
27457 Holiday Ln. #G
Perrysburg, OH 43551-3346

Joseph J. Rudski
7304 Red Maple Drive
Holland, OH 43528

Patricia A. Rudski
7304 Red Maple Drive
Holland, OH 43528

Robert A Retske
5414 Monroe St, #B
Toledo, OH 43623-2818

                                                  /s/Diana Hernandez
                                          Deputy Clerk, U.S. Bankruptcy Court